IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GINGER KING,<br>ex rel UNITED STATES OF AMERICA<br>AND STATE OF TEXAS,<br><br>    Relators,<br><br>v.<br><br>METHODIST HOSPITAL OF DALLAS<br>d/b/a METHODIST HEALTHCARE<br>SYSTEMS AND d/b/a METHODIST<br>DALLAS MEDICAL CENTER,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:21-CV-1923 |

**<u>DEFENDANT'S MOTION TO DISMISS</u>**

135762845.9

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.      RELATOR'S ALLEGATIONS AGAINST METHODIST ............................................ 3

III.     LEGAL STANDARD..................................................................................... 4

IV.     ARGUMENTS & AUTHORITIES ..................................................................... 6

      A.      Relator's First, Second, Third, and Fourth Counts Should Be Dismissed Because the SAC Fails to Plead Fraud With Particularity Under Rule 9(b). ........ 7

           1.      Relator Fails to Allege the "Who" of the Fraud ....................................... 9

           2.      Relator Fails to Allege the "What" of the Fraud....................................... 9

           3.      The SAC Fails to Allege the "How" of the Fraud .................................. 11

           4.      The SAC Fails to Allege the "When" and "Where" of the Fraud ........... 11

           5.      Relator's Failure to Plead with Particularity Requires Dismissal............ 12

      B.      Plaintiff's First, Second, Third, Fourth and Sixth Counts Should Be Dismissed Because Even Accepting the Allegations as True, Relator's Accusations of Fraud are Not Plausible.................................................................. 13

      C.      Relator's First, Second, and Third Counts Should Be Dismissed Because the SAC Does Not Plead Materiality ..................................................... 17

      D.      Relator's First, Second, Third, and Fourth Counts Should Be Dismissed Because the SAC Does Not Plead Scienter ......................................... 20

      E.      Relator's Fifth Count Should Be Dismissed Because The Cause of Action Under Texas Health & Safety Code § 161.134 is time barred............................ 21

      F.      Relator's Fourth and Sixth Counts Fail to Allege Facts to State a Cause of Action for FCA and TMFPA Retaliation.............................................. 22

      G.      Dismissal Should be With Prejudice.................................................................. 25

V.      CONCLUSION............................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. BP Expl. & Prod., Inc.*,
    851 F.3d 384 (5th Cir. 2017) ........................................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................6, 13, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................................................3, 4

*Bell Atlantic v. Twombly*,
    550 U.S. 554 (2007).......................................................................................6, 13, 14

*United States ex rel. Clausen v. Lab. Corp of Am.*,
    290 F.3d 1301 (11th Cir. 2002) ................................................................................10

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ......................................................................................4

*D'Agostino v. ev3, Inc.*,
    845 F.3d 1 (1st Cir. 2016).........................................................................................20

*Davis v. United Health Servs.*,
    No. 1:18-CV-1093-RP, 2020 WL 33597 (W.D. Tex. Jan. 2, 2020)........................22

*U.S. ex rel. Doe v. Dow Chem. Co.*,
    343 F.3d 325 (5th Cir. 2003) ....................................................................................25

*Dorsey v. Portfolio Equitie*s,
    540 F.3d 333 (5th 2008)............................................................................................21

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)..................................................................................................13

*United States ex rel. Farmer v. City of Houston*,
    523 F.3d 333 (5th Cir. 2008) ....................................................................................21

*United States ex rel. Gage*,
    623 Fed. Appx. 622, 625 (5th Cir. 2015) ..............................................................9, 11

*United States ex rel. George v. Bos. Sci. Corp.*,
    864 F. Supp. 2d 597 (S.D. Tex. 2012) .....................................................................23

*United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*,
748 F. Supp. 2d 95 (W.D. Tex. 2010)...................................................................24

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ................................................................5, 7, 8, 9, 10

*United States ex rel. Grubbs v. Kanneganti*,
595 F.3d 180 (5th Cir. 2009) ...............................................................................9

*Guerrero v. Total Renal Care, Inc.*,
EP-11-cv-449-KC, 2012 WL 899228 (W.D. Tex. Mar. 12, 2012)....................................22, 24

*Health Choice Alliance, LLC v. Eli Lilly & Co.*,
No. 5:17-cv-123, 2018 WL 4026986 (E.D. Tex. July 25, 2018).............................................21

*United States ex rel. Hebert v. Dizney*,
295 F. App'x 717 (5th Cir. 2008) ...........................................................................11

*Hutchins v. Wilentz, Goldman & Spitzer*,
253 F.3d 176 (3d Cir. 2001)...................................................................................22

*Jamison v. Flou Fed. Sol., LLC*,
No. 3:16-CV-0441-B, 2017 WL 3215289 (N.D. Tex. July 28, 2017).......................................23

*United States ex rel. Janssen v. Lawrence Mem'l Hosp.*,
949 F.3d 533 (10th Cir. 2020) ...............................................................................19

*Kamps v. Baylor Univ.*,
592 F. App'x 282 (5th Cir. 2014) (per curiam) (unpublished) ...............................................14

*United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*,
360 F.23d 220, 232 (1st Cir. 2004)...........................................................................9

*United States ex rel. Kelly v. Serco, Inc.*,
846 F.3d 325 (9th Cir. 2017) ................................................................................20

*U.S. ex rel. Lemon v. Nurses to Go, Inc.*,
924 F.3d 155 (5th Cir. 2019) ................................................................................19

*United States ex rel Ligai v. ESCO Tech., Inc.*,
611 F. App'x 219 (5th Cir. 2015) .......................................................................22, 24

*United States ex rel. Long v. GSD&M Idea City LLC*,
No. 3:11-cv-1154, 2013 WL 214590 (N.D. Tex. Jan 18, 2013).............................................21

*U.S. ex rel. Longhi v. United States*,
575 F.3d 458 (5th Cir. 2009) ..............................................................................5, 7, 8

*United States ex rel. Marshall v. Woodward, Inc.*,
   812 F.3d 556 (7th Cir. 2015) ...............................................................................20

*United States ex rel. McBride v. Halliburton Co.*,
   848 F.3d 1027 (D.C. Cir. 2017) ...........................................................................20

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) ...............................................................................21

*Mohasco Corp. v. Silver*,
   447 U.S. 807 (1980) .............................................................................................22

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
   519 F. App'x 890 (5th Cir. 2013) ...........................................................................7

*United States ex rel. Patton*,
   418 F. App'x 366, 371-72 (5th Cir. 2011). ......................................................23, 24

*United States ex rel. Petratos v. Genentech Inc.*,
   855 F.3d 481 (3d Cir. 2017) .................................................................................20

*United States ex rel. Porter v. Magnolia Health Plan*,
   810 Fed. Appx. 237 (5th Cir. 2020) ....................................................................20

*Robertson v. Bell Helicopter Textron*,
   32 F.3d 948 (5th Cir. 1994) .......................................................................22, 23, 24

*Sealed Appellant I v. Sealed Appelle I*,
   156 F. App'x 630 (5th Cir. 2005) ........................................................................12

*United States ex rel. Spicer v. Westbrook*,
   751 F.3d 354 (5th Cir. 2014) .................................................................................8

*United States ex rel. Steury v. Cardinal Health, Inc.*,
   625 F.3d 262 (5th Cir. 2010) ..............................................................................6, 7

*Thompson v. City of Waco*,
   764 F.3d 500 (5th Cir. 2014) ...........................................................................23, 24

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
   125 F.3d. 899 (5th Cir. 1997) ..............................................................................5, 7

*Tuchman v. DS Communications Corp.*,
   14 F.3d 1061 (5th Cir. 2003) ...............................................................................21

*U. S. ex rel., Harman v. Trinity Industries, Inc.*,
   872 F.3d 645 (5th Cir. 2017) ...............................................................................20

*United States v. Magnolia Health Plan, Inc.*,
    810 F. App'x 237 (5th Cir. 2020) ................................................................20

*United States v. Sanford-Brown, Ltd.*,
    840 F.3d 445 (7th Cir. 2016) ......................................................................20

*Universal Health Servs. V. United States ex rel. Escobar*,
    136 S. Ct. 1989 (2016)........................................................................2, 18, 19

*U.S. ex rel. Wall v. Vista Hospice Care, Inc.*,
    778 F. Supp. 2d 709 (N.D. Tex. 2011) ..........................................................8

*Willard v. Humana Health Plan of Texas Inc.*,
    336 F.3d 375 (5th Cir. 2003) .........................................................11, 12, 25

*Williams v. WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) .......................................................................7

**Rules and Statutes**

31 U.S.C. 3730(h) .............................................................................................25

31 U.S.C. § 3729(a)(1)(A) ...................................................................................4

31 U.S.C. § 3729(a)(1)(B) ...................................................................................4

31 U.S.C. § 3729(a)(1)(G) ...................................................................................4

42 U.S.C. 1395(p) ..............................................................................................14

False Claims Act, 31 U.S.C. § 3729(a)(1) *et seq.* ............................................1

Fed. R. Civ. P. 9(b) .............................................................................................5

Tex. Health & Safety Code § 161.134(h) ...........................................................2

Texas Health & Safety Code § 161.134.............................................2, 6, 21, 25

Texas Health and Safety Code § 161.134(a) ....................................................21

Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code Ann. § 36.000 *et.
    seq.* ..............................................................................................................1

**Other Authorities**

42 C.F.R. § 412.170.........................................................................................17

85 Fed. Reg. 54820, 54827 ..............................................................................16

85 Fed. Reg. 58432, 58437 (Oct. 1, 2020)................................................................................15

86 Fed. Reg. 44774, 45301 (Oct. 1, 2021)................................................................................16

86 Fed. Reg. at 45307 .............................................................................................................16

87 Fed. Reg. 48780, 48782 (Oct. 1, 2022)................................................................................17

The Centers for Medicare & Medicaid Services, *Hospital-Acquired Condition Reduction Program*, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/HAC-Reduction-Program .............................................14

The Centers for Medicare & Medicaid Services, *CMS Announces Relief for Clinicians, Providers, Hospitals and Facilities Participating in Quality Reporting Programs in Response to COVID-19*, https://www.cms.gov/newsroom/press-releases/cms-announces-relief-clinicians-providers-hospitals-and-facilities-participating-quality-reporting .........................16

Defendant Methodist Hospitals of Dallas ("Methodist") moves to dismiss with prejudice the deficient qui tam and employment claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1) *et seq.*, the Texas Medicaid Fraud Prevention Act ("TMFPA"), Tex. Hum. Res. Code Ann. § 36.000 *et. seq.*, and the Texas Health & Safety Code, and the Texas Human Resources Code pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(b)(6), 9(b) and 8(a) for failure to state a claim upon which relief can be granted.

## I.      INTRODUCTION

In her Second Amended Qui Tam Complaint ("SAC"), Plaintiff-Relator Ginger King ("Relator") fails to sufficiently state a claim against Methodist and fails to: (1) meet the FRCP 9(b) *particularity* requirements; (2) plead sufficient facts to support *plausible* claims as required by FCRP 8(a) under the FCA, TMFPA, Texas Health & Safety Code, or the Texas Human Resources Code; (3) satisfy the rigorous *materiality* standard required by the FCA; (4) plead *scienter*; (5) plead that she *timely* filed her cause of action under the Texas Health & Safety Code; and (6) properly allege causes of action for FCA and TMFPA *retaliation*.

Relator filed her original complaint in this case on August 18, 2021. (ECF No. 2). Relator amended her complaint on January 14, 2022. (ECF No. 12). The United States Government investigated Relator's allegations and declined to intervene on February 2, 2023. (ECF No. 26). Despite amending her complaint for a second time on February 15, 2023, Relator still fails to satisfy the pleading requirements for a qui tam lawsuit under the FCA.

Relator is a former, apparently disgruntled, employee of Methodist.  In Relator's SAC, the majority of the allegations relate to a period of time that encompasses unprecedented and unique conditions that required frontline workers to deploy new and unfamiliar protocols and treatments in responding to the global COVID-19 epidemic.

Relator broadly accuses Methodist of making "false claims relating to its obligations under the Hospital Acquired Conditions Reduction Program ("HACRP") that are material to the federal Medicare programs and Texas Medicaid program." SAC at ¶ 9. From the tenuous position of being employed only from May 2019 to August 2020 during a period of time that included a once-in-a-lifetime pandemic, Relator offers nothing beyond conclusory statements and assertions without factual support. ***At worst***, Relator alleges a failure to properly document hospital acquired pressure injuries ("HAPIs") as part of the HACRP, or an alleged handful of minor regulatory violations for which the U.S. investigated and declined to intervene in this case.

By not providing the who, what, how, when or where required by FRCP 9(b), Relator's SAC fails to identify a single false submission; physicians or nurses that failed to report the HAPIs; or instructions to Methodist staff to modify records in order to "game" the HACRP. That failure is not surprising as Relator does not possess knowledge of facts that would support a claim of fraud or employment violations.

Relator does not allege Methodist acted with the requisite scienter. *Universal Health Servs. V. United States ex rel. Escobar,* 136 S. Ct. 1989, 2003 (2016) (instructing that the "rigorous" scienter requirements must be strictly enforced). It is not enough that Relator claims to identify a falsehood; she must show that Methodist knowingly submitted a false claim. Setting aside the veracity of Relator's cause of action under Texas Health & Safety Code § 161.134, it must also be dismissed for failing to meet the 180-day limitations period set forth in Tex. Health & Safety Code § 161.134(h).

In short, the SAC is devoid of facts to support a plausible FCA action, claim of retaliation or that Relator engaged in protected whistleblowing activity during her employment, and as a result, it should be dismissed in its entirety with prejudice.

135762845.9                                                  - 2 -

## II.      RELATOR'S ALLEGATIONS AGAINST METHODIST

Relator initiated this qui tam on August 18, 2021 by filing claims on behalf of the U.S. and the State of Texas under the FCA and the TMFPA. The Court must accept as true "well-pleaded facts," excluding all "conclusory statements" and "legal conclusion[s] couched as…factual allegations[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Here are the only well-pleaded facts in Relator's SAC:

- Methodist Hospitals of Dallas ("MHD") d/b/a Methodist Dallas Medical Center ("MDMC") and also d/b/a as Methodist Health System ("MHS") is located in North Texas and provides in-patient and outpatient medical care and MDMC is the main teaching and referral center for MHS.  SAC ¶ 1.
- Relator Ginger King is a nursing professional with more than 19 years of clinical/leadership experience. From May 2019 until August 2020, Relator served as Acute Care Services Director for Cardiology, Centralized Monitor Bank, Oncology, Med-Surg., Wound Care and Interim Director of Education for MHS from February 2020 until August 2020.  SAC ¶14
- MHD is a Texas non-profit corporation.  SAC ¶ 27.
- The Hospitals that are part of MHS are MDMC, a 556 licensed bed teaching referral hospital; Methodist Charlton Medical Center (MCMC), a 317 licensed bed hospital; and Methodist Richardson  Medical Center (MRMC), which now operates a 469 licensed bed hospital across two campuses. SAC ¶28.
- The primary offices of MHD and MDMC is 1441 N. Beckley Avenue, Dallas, Texas, 75203. SAC ¶29.

The remainder of Relator's allegations are unsupported mischaracterizations, opinions and conclusory statements which the Court may not rely upon in deciding this Motion to Dismiss.

In her SAC, Relator makes conclusory allegations that Methodist inadequately reported HAPIs in order to improve its score under the HACRP:

- Relator alleges that Methodist has submitted false claims by "[f]alsely certifying, both expressly and impliedly, to accurately reporting and disclosing HACs as required by the HACRP through the CMS Hospital Quality Reporting (HQR) System in order to avoid being in the worst-performing 25 percent (bottom quartile) of all subsection (d) hospitals with respect to HAC quality measures." SAC ¶10.
- "Falsely certifying, both expressly and impliedly, to accurately reporting and disclosing HACs pursuant the HACRP established by CMS in order to earn

- incentives under the HACRP for performance exceeding baseline target goals established under the HACRP." SAC ¶ 11.
- "Submitting claims for reimbursement for services, including, inter alia, nursing services necessary for the delivery of proper care, were in fact non-existent, grossly deficient, materially substandard and/or worthless. Defendant knowingly exploited inpatients by receiving federal funds intended for the care of the patients while knowingly failing to utilize those funds toward patient care. This has caused infliction of physician pain, injury and/or mental anguish to the patients and the deprivation of services which are necessary to maintain the mental and physical health of its patients." SAC ¶12.

Relator further alleges that she received a warning, and was constructively discharged, as a retaliatory response to her "continuing complaints of the need to reduce HAPIs". SAC ¶25. The U.S. investigated these claims and declined to intervene. The Court ordered the Complaint unsealed on February 10, 2023. (ECF No. 26).

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Relator's SAC alleges qui tam liability under three sections of the FCA:

- 31 U.S.C. § 3729(a)(1)(A), "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval". SAC ¶ 96.
- 31 U.S.C. § 3729(a)(1)(B), "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim". SAC ¶ 99.
- 31 U.S.C. § 3729(a)(1)(G), "knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement, material to an obligation to pay or transmit money or property to the government, or knowingly conceal[ing] or knowingly and improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money to the government". SAC ¶ 102.

For a claim to be actionable under the FCA, four elements must be adequately pled: "(1) [that] 'there was a false statement or fraudulent course of conduct; (2) made or carried out with

the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).'" *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009).

Complaints filed pursuant to the FCA must also satisfy the "heightened" pleading standard of FRCP 9(b). This standard has "long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009). Under FRCP 9(b), a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "We apply Rule 9(b) to fraud complaints with bite and without apology." *Grubbs*, 565 F.3d at 185 (quotation marks and citation omitted). Rule 9(b) ensures complaints "provide[] defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *Id.* (internal quotation omitted).

A relator must specifically plead the factual "who, what, when, where, and how" of the fraud being alleged in a FCA claim. *U.S. ex rel. Thompson*, 125 F.3d at 903. "Because the linchpin of an FCA claim is a false claim, 'the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby must be stated in a complaint alleging violation of the FCA in order to satisfy Rule 9(b)." In order to survive a Motion to Dismiss under Rules 8(a) and 12(b)(6), a complaint is also required to plead "enough facts to state a claim to relief that is plausible on its face," and that permits the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp.*, 550 U.S. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals

135762845.9                                     - 5 -

of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 668.

The plausibility of a complaint requires the separation of "well-pleaded facts" from "conclusory statements" and "legal conclusion[s] couched as…factual allegation[s]." *Bell Atlantic Corp.*, 550 U.S. at 555. "'[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.'" *Bell Atlantic v. Twombly*, 550 U.S. 554, 555 (2007) (internal citation omitted). Rule 12(b)(6) "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 556. The requirement of well-pleaded facts means that mere "conclusory statements" and "legal conclusion[s] couched as [] factual allegation[s]" can be disregarded. *Id.* It also means that the alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When alternative explanations are likely or "obvious," it is not reasonable to infer that the well-pleaded (non-conclusory) behavior was unlawful. *Id*.

## IV.    ARGUMENTS & AUTHORITIES

The SAC should be dismissed in its entirety for multiple independent reasons. First, the SAC fails to meet Rule 9(b)'s heightened pleading requirement. Second, the SAC fails the plausibility standard under Rules 8(a) and 12(b)(6), which require that a "plaintiff's factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation." *United States ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir. 2010). Third, the Complaint fails to plead any FCA violations that are material. Fourth, Relator has not pled any facts supporting scienter. Fifth, the Relator's cause of action under Texas Health & Safety Code § 161.134 is not timely. Sixth, Relator's claims of retaliation for reporting wrongdoing fail to state a cause of action for FCA and TMFPA retaliation. The utter paucity of facts in the SAC supports dismissal with prejudice. Relator should not be permitted leave to amend.

135762845.9    - 6 -

**A.      Relator's First, Second, Third, and Fourth Counts Should Be Dismissed Because the SAC Fails to Plead Fraud With Particularity Under Rule 9(b).**

The gaps in the Relator's allegations are apparent and fatal. It is black letter law that a plaintiff must meet the heightened pleading standard of Rule 9(b) when alleging false claims. *Grubbs,* 565 F.3d. at 185; *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d. 899, 903 (5th Cir. 1997). Courts must apply Rule 9(b) "with 'bite' and 'without apology,'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)), and "require[], at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *Steury*, 625 F.3d at 266 (quoting *United States ex rel. Thompson c. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Relator's SAC makes only "sweeping and conclusory" allegations "without a shred of detail or particularity" that Methodist submitted false claims to a federal health care program. *See United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894 (5th Cir. 2013). This does not meet the requirement under Rule 9(b) that Relator must detail the who, what, when, where, and how of the alleged fraud. *Id*. at 892. Plaintiffs suing under the FCA must plead facts that (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Abbott v. BP Expl. & Prod., Inc*., 851 F.3d 384 , 387 (5th Cir. 2017) (citing *United States ex rel. Longhi v. United States*, 575 F.3d 458 , 467 (5th Cir. 2009)).

The Court's holding in *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709 (N.D. Tex. 2011) is instructive. The Court's examination of 9(b) stressed the importance of this particularly standard in the health care certification arena:

> However, Defendants are entitled to a pleading which specifies the manner in which "VistaCare" allegedly instructed its employees to falsify certifications for specific

individual patients, that those employees did so with the requisite intent, that named individuals acting for VistaCare asked other named individuals to forge doctors' names for specific individuals, and that they did so. Otherwise, Defendants would not be able to defend against Wall's generalized complaints.

*Id.* at 717. Despite the *VistaCare* relator's amended complaint including details relating to the when and how of the alleged scheme, the Court held it was not enough to plead with particularity. Specifically, the amended complaint included the initials of patients and dates on which the patients improperly received hospice care (the "when"), multiple ways in which *VistaCare* perpetrated the alleged fraud including "that 'VistaCare' tried to persuade non-physicians to improperly certify patients; that 'VistaCare' forged signatures of physicians; that 'VistaCare' 'shopped around' for doctors who were willing to certify patients not qualified for hospice care, and pressured them to do so; and that 'VistaCare' kept changing diagnoses" (the "how"). *Id.* at 716. Yet, the Court dismissed the lawsuit because the *VistaCare* relator had failed to specifically plead the "who", "what", and "where". Relator in this case pleads less details and has similarly failed to plead with the particularity necessary to meet Rule 9(b).

In the context of an FCA case, Rule 9(b) ordinarily requires pleading, with specificity, details of false claims actually submitted to the government. In other words, the presentment of a false claim is the "*sine qua non*" of FCA liability. *Grubbs*, 565 F.3d at 188. This is because the FCA "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 364-65 (5th Cir. 2014) (quoting *Longhi*, 575 F.3d at 467). This requirement serves as a critical gatekeeping role and "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *United States ex rel. Grubbs v. Kanneganti*, 595 F.3d 180, 190 (5th Cir. 2009). Relator fails to plead details of any false claims actually submitted by Methodist

to the Government. The Relator's imprecision and inexactness fails to satisfy the default method of satisfying Rule 9(b) in the FCA context. *Grubbs*, 565 F.3d at 188.

### 1. Relator Fails to Allege the "Who" of the Fraud

Relator does not identify any individuals who participated in the alleged fraud by failing to adequately report HAPIs in a manner that would improve Methodist's HACRP score; state the specific persons purposefully acting on behalf of Methodist acted with the requisite intent in making false statements or preparing false records to obtain reimbursement from the government; or even identify whether the patients with HAPIs in fact have Medicare or Medicaid.

It is well settled that Rule 9(b) requires a plaintiff who accuses a defendant of violating the FCA to identify the particular employees who engaged in the unlawful conduct. An FCA plaintiff, therefore, must allege "the identity of the person making the misrepresentation and what that person obtained thereby." *Grubbs*, 565 F.3d at 186 (internal quotation marks omitted). Relator has failed to identify the "who," and that failure compels dismissal of the claims against Methodist.

### 2. Relator Fails to Allege the "What" of the Fraud

In cases such as this one, where the allegation of falsity is predicated on a certification of compliance with a statute or regulation, the plaintiff must "plead with particularity what was false about the claims [and] how they were false." *U.S. ex rel. Gage v. Davis S.R. Aviation, L.L.C*, 623 Fed. Appx. 622, 625 (5th Cir. 2015). (emphasis in original). A plaintiff should "provide details that identify particular false claims for payment that were submitted to the government…[including] the dates of the claims, the contents of the forms or bills submitted, their identification numbers, the amount of money charged to the government, [and] the particular goods or services for which the government was billed. *See United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.23d 220, 232 (1st Cir. 2004) (quoting *United States ex rel. Clausen v. Lab. Corp of Am.*, 290 F.3d 1301, 1312 n.21 (11th Cir. 2002)). Where a plaintiff is unable to identify

particular invoices that he believes were fraudulent, the complaint must "include both particular details of a scheme to present fraudulent bills to the Government and allegations making it likely bills were actually submitted." *Grubbs*, 565 F.3d at 191. Relator fails to meet either approach.

Relator failed to identify a single claim to the government that was false. She failed to identify when any claims that didn't properly reflect a HAPI were submitted for reimbursement. She failed to plead any facts showing motive or indicating conscious behavior on the part of Methodist. Relator offers only sweeping and conclusory allegations without any facts to support these reckless claims. When it comes to submissions to the State of Texas, Relator alleges that:

> *[s]ome* of the severe, but not all of the, incidents of HAPIs within MDMC, failure to provide required nutrition, and falls, were required to be reported by Defendant or MDMC to the State of Texas (on information and belief by Scribner) through its Texas Department of State Health Services, but they were not timely reported.

SAC at ¶16 (emphasis added). "Some" provides no detail in determining the "what" of the fraud or what HAPIs. Relator does not plead a single instance of a HAPI that was not reported to the State of Texas and her claims under the TMFPA should appropriately be dismissed. Turning to submissions to Medicare, Relator again alleges that:

> *[s]ome* of the severe, but not all of the, incidents of HAPIs within MDMC, failure to provide required nutrition, and falls, were required to be reported by Defendant or MDMC (on information and belief by Scribner) to the federal Center for Medicare Services as a result of the high percentage of patients at MDMC covered by Medicare.

SAC at ¶16 (emphasis added). Again, which HAPIs? Relator does not identify a single patient or instance in which one of these alleged failures (a) even occurred or (b) if it occurred, it was not reported when required. Critically, Relator fails to plead with particularity what was actually false about the claims or give any detail about a single claim Methodist submitted to the Government.

### 3. The SAC Fails to Allege the "How" of the Fraud

The SAC fails to allege with particularity the "how." To plead the "how" of the claim, the plaintiff must describe how the defendant failed to comply with the pertinent statute, regulation, or contract provision. *See Gage*, 623 F. App'x. at 627. Relator's SAC has failed to state with particularity what Methodist did wrong. A perfect example is found in Relator's allegation that Methodist "knowingly (i) directed nursing staff to change diagnosis of HAPIs or not record the occurrence of HAPIs, (ii) recorded incorrect diagnosis codes to hide the occurrence of HAPIs, and (ii) [sic] failed to accurately record or code HAPIs, all to circumvent the HACRP established by 42 U.S.C. § 1395(ww)(p)." SAC ¶ 56. This allegation is embarrassingly bereft of the particularity required under Rule 9(b). The truth is that Relator fails to identify a single instance where Methodist employees were instructed to change a diagnosis or not provide proper treatment, or even identify the employees that allegedly received these instructions.

### 4. The SAC Fails to Allege the "When" and "Where" of the Fraud

The SAC fails to identify when or where Relator believes false claims were submitted to the government. FCA claims that lack specific temporal and geographic allegations are subject to dismissal. *Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003). Relator fails to offer any details on when or where Methodist submitted any false claims. The date ranges provided by Relator are temporal allegations that do not meet the requirements of Rule 9(b). For example, the SAC provides general ranges such as: "ongoing for several years"; "on multiple occasions"; and "in 2020 and previously." (SAC. at ¶¶ 2, 57, 71). *See United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 722-23 (5th Cir. 2008) (rejecting FCA Relators' allegations that false claims were submitted "at least once each year" between 1995 and 2001, "on a daily basis," and within various spans of years, as insufficiently particular under Rule 9(b)); *see also Sealed Appellant I v. Sealed Appelle I*, 156 F. App'x 630, 634-34 (5th Cir. 2005) (affirming dismissal of

an FCA claim where the complaint failed to "identify a single false claim that was actually submitted to the government" but rather alleged the existence of false claims generally).  Relator has also failed to plead with particularity where the supposed wrongdoing occurred as she does not point to any specific city or Methodist facility that these supposed HAPI incidents occurred at. See *Willard*, 336 F.3d at 385 (affirming dismissal of a claim where the plaintiff failed to identify the site of alleged wrongful negotiations).

### 5.    Relator's Failure to Plead with Particularity Requires Dismissal

Relator's SAC fails to plead facts supporting an allegation that Methodist (a) failed to document HAPIs or (b) that such a failure would have affected Methodist's performance under the HACRP.  Relator attempts to smear Methodist by allegations of nursing services that "were in fact non-existent, grossly deficient, materially substandard and/or worthless" without pleading any facts in support of such libelous accusations. SAC at ¶12.

Relator confusingly alleges that "[d]efendant knowingly exploited inpatients by receiving federal funds intended for the care of the patients while knowingly failing to utilize those funds towards patient care." SAC at ¶12. Yet nowhere does the Relator allege any specific instances of inaccurate documentation on a patient record; the improper submission of a claim for reimbursement;  claims that were submitted for any treatments not actually performed; or how a non-profit hospital failed to use "funds towards patient care." Relator's generalized conclusions are unparticular and insufficient to satisfy Rule 9(b). *See Willard*, 336 F.3d at 385 (holding that the relator failed to meet Rule 9(b) where he made only a "general assertion" regarding the defendant's allegedly fraudulent conduct). Relator has failed to plead with particularity an actual submission that affected it's HAC score and resulted in improper payments to Methodist, and as such, Relator should not be permitted to reach discovery.

135762845.9

Rule 9(b) is meant as a gatekeeper for meritless claims such as this and the SAC should be dismissed.

**B.     Plaintiff's First, Second, Third, Fourth and Sixth Counts Should Be Dismissed Because Even Accepting the Allegations as True, Relator's Accusations of Fraud are Not Plausible.**

Relator's SAC should also be dismissed in its entirety on the basis that it fails to satisfy Rule 8(a)'s plausibility requirement. Relator is required to allege a facially plausible submission of false claims, which would require particularized facts indicating at least one actual submission of a false claim for reimbursement under a federal health care program such as Medicare, Medicaid, or Tricare. Relator has failed to identify a single claim submitted by Methodist that was allegedly false or fraudulent, much less any specificity of who submitted the claim, when the claim was submitted, why the claim is "false" or how the claim violated a material Medicare requirement. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching [summary judgment] proceedings." *Twombly*, 550 U.S. at 559. Thus, Rule 8(a) imposes a plausibility requirement, "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value.'" *Twombly*, 550 U.S. at 558 (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)) (additional internal quotation marks and citations omitted). Relator's allegations fail to rise above "labels and conclusions, and a formulaic recitation of the elements of a cause of action", and therefore, do not satisfy the requirements of Rule 8(a). *Bell Atlantic Corp.*, 550 U.S. at 555.

Factual allegations that are "merely consistent with" an alleged unlawful scheme "stop [] short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atlantic Corp.*, 550 U.S. at 557). Relator must plead facts that plausibly preclude any "more likely" lawful explanation consistent with Methodist's alleged conduct.

*Ashcroft*, 556 U.S. at 680 (citing *Bell Atlantic Corp.,* 550 U.S. at 567). Setting aside Relator's conclusory statements as Rule 8(a), *Bell Atlantic Corp*, and *Ashcroft* require, Relator fails to provide the particular and factual details necessary to support anything beyond mere speculation that fraud occurred. Relator's boilerplate allegations overlook the facts demonstrating behavior that is "not only compatible with," but "more likely explained by" lawful conduct. *Ashcroft*, 556 U.S. at 680 (quoting *Bell Atlantic Corp*., 550 U.S. at 570). Relator's allegations relating to the HACRP do not meet this standard.

Relator attempts to overcome these failings by providing her unique interpretations of documents attached to the SAC. "When a plaintiff attaches documents to the complaint, courts are not required to accept the plaintiff's interpretation of those documents." *Kamps v. Baylor Univ*., 592 F. App'x 282 , 284 n.1 (5th Cir. 2014) (per curiam) (unpublished). Simply put, her allegations and interpretation of documents do not transcend the structure and design of the HACRP, in particular, the structure and design in effect during the time period at issue in the SAC.

The HACRP, created under Section 1886(p) of the Social Security Act, established an incentive to hospitals to reduce the incidence of HAC and is intended to "link Medicare payments to healthcare quality in the inpatient hospital setting."[1] Section 1886(p) of the Social Security Act establishes an incentive for hospitals to reduce the incidence of hospital-acquired conditions by requiring the Secretary to make an adjustment to payments to applicable hospitals, effective for discharges beginning on October 1, 2014. CMS applies a 1-percent payment reduction to hospitals that rank in the worst-performing quartile (25 percent) of all applicable hospitals, relative to the national average, with respect to conditions acquired during the applicable period calculated

---

[1] 42 U.S.C. 1395(p) and https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/HAC-Reduction-Program.

135762845.9                                          - 14 -

against all of the hospital's discharges for the specified fiscal year. 85 Fed. Reg. 58432, 58437 (Oct. 1, 2020). CMS evaluates overall hospital performance by calculating Total HAC Scores as the equally weighted average of scores on various measures included in the program.

Since the beginning of the program, ***Methodist has never had a score placing it in the worst performing quartile of the HACRP*** nor has Relator so pled. In the face of this performance record, and without any factual support, Relator baldly alleges that "[i]f HAPI rates had been reported accurately, Defendant was at risk of being penalized over $6.76 million based on Medicare funding of at least $676 million dollars for the period of October 1, 2019 to September 30, 2020." SAC at ¶60. Relator presents no allegations or facts relating to the applicable program years to support this allegation. Relator then baselessly offers the conclusory statement that "[t]he results would have been the same or similar for each fiscal year since the inception of the HACRP in fiscal year 2015, representing penalties of at least $33 million." SAC at ¶61.

The first cut against plausibility is recognizing the limited impact an increase in HAPI reporting would have on the overall HAC measurement for a hospital. The HACRP measure scores utilized to determine the worst performing hospitals are based on six, equally weighted measures.[2] One of the six measures is the CMS Patient Safety and Adverse Events Composite ("CMS PSI 90"). ***HAPIs are but one of ten elements falling under the CMS PSI 90 measure data***. Relator is, therefore, alleging that failing to report HAPIs would have adjusted the 1/10 of the PSI composite value representing HAPIs, which in turn would have had an upward adjustment on the

---

[2] CMS uses six quality measures (one claims-based composite measure of patient safety and five chart-abstracted measures) to calculate total HAC scores: (1) Claims-based composite measure of patient safety, using the CMS Patient Safety Indicators ("CMS PSI 90"); (2) Centers for Disease Control and Prevention National Healthcare Safety Network ("CDC NHSN") HAI Measures – (a) Central Line-Associated Bloodstream Infection ("CLABSI"); (b) Catheter-Associated Urinary Tract Infection ("CAUTI"); (c) Surgical Site Infection for Abdominal Hysterectomy and Colon Procedures ("SSI"); (d) Methicillin-resistant Staphylococcus aureus bacteremia ("MRSA"); and (e) Clostridium difficile Infection ("CDI").

1/6 of Methodist's HAC measurement, resulting in a HACRP score in the worst performing percentile. Relator pleads no facts to support such a result.

Adding to implausibility, and fatal to Relator's inadequately pled allegations, CMS made changes to the program resulting from the COVID-19 pandemic. Through memoranda released on March 22, 2020[3] and an Interim Final Rule with Comment published September 2, 2020 (85 Fed. Reg. 54820, 54827), CMS ***excluded*** all data regarding care provided during the first and second quarters of CY 2020 from HACRP performance calculations and made data reporting optional. In the 2022 Inpatient Prospective Payment System final rule, CMS made adjustments to the HACRP measurements, recognizing that COVID-19 led to "significant and ongoing effects on the provision of medical care in the country" and "impedes effective quality measurement in many ways." 86 Fed. Reg. 44774, 45301 (Oct. 1, 2021). CMS finalized a policy to suppress Q3 and Q4 CY 2020 CDC NHSN HAI and CMS PSI 90 data for the HACRP, ***thus nullifying 2020 data as a result of COVID-19***. 86 Fed. Reg. at 45307. In support of these policies CMS stated that:

> As a result of the PHE, hospitals could provide care to their patients that meets the underlying clinical standard but results in worse measured performance, and by extension, lower payment adjustments in the HACRP. We are also concerned that regional and temporal differences in COVID-19 prevalence during the FY 2022, FY 2023, and FY 2024 performance periods, which include data collected during the PHE, may directly affect hospitals' HAC measure performance for the FY 2022, FY 2023, and FY 2024 program years. Although these regional and temporal differences in COVID-19 prevalence rates do not reflect differences in the quality of care furnished by hospitals, they directly affect the value-based payment adjustments that these hospitals are eligible to receive and could result in an unfair and inequitable distribution of those assessment of penalties for excess hospital acquired conditions. These inequities could be especially pronounced for hospitals that have treated a large number of COVID-19 patients. *Id.* at 45301.

---

[3] *See* CMS Announces Relief for Clinicians, Providers, Hospitals and Facilities Participating in Quality Reproting Programs in Response to COVID-19, March 22, 2020, available at: https://www.cms.gov/newsroom/press-releases/cms-announces-relief-clinicians-providers-hospitals-and-facilities-participating-quality-reporting (last visited May 11, 2023).

CMS also addressed the challenges of patient care during a global pandemic, noting:

> [T]hat scientific understanding of a particular disease or pathogen may evolve quickly during an emergency, especially in cases of new disease or conditions. Finally, we stated our belief that, as evidenced during the COVID-19 PHE, national or regional shortages or changes in health care personnel, medical supplies, equipment, diagnostic tools, and patient case volumes or facility-level case mix may result in significant distortions to quality measurement.

*Id* at 45301. As a result, in order to "fulfill our objective to not hold facilities accountable for distorted measure results under the FY 2022 and FY 2023 Programs", CMS finalized a number of Measure Suppression Factors to guide the agency's determination of whether HACRP measures for certain program years were overlapping with the COVID-19 PHE. *Id.* The applicable period of the HACRP for Relator's allegations would be FY 2022, which uses data from the following periods:

- For the CMS PSI 90 measure, data from July 1, 2018 through June 30, 2020; and

- For the CDC NHSN HAI measures, data from January 1, 2019 through December 31, 2020. *See* 42 C.F.R. § 412.170.

In response to these policies, in the 2023 Inpatient Prospective Payment System final rule for FY 2023, CMS finalized a policy ***to suppress all six measures in the HACRP for the FY 2023 program year***. 87 Fed. Reg. 48780, 48782 (Oct. 1, 2022). Stated otherwise, as a result of COVID-19 and the direct impact it had on hospital operations and HACs, CMS is not even calculating measure scores or Total HAC Scores. Therefore, even if Relator's allegations regarding the manipulation of HAPI reporting during her short tenure at Methodist were true, there would be no impact on HACRP and Medicare reimbursements to Methodist and therefore no plausible claim.

**C.    Relator's First, Second, and Third Counts Should Be Dismissed Because the SAC Does Not Plead Materiality**

In addition to its other defects, the SAC should separately be dismissed because Relator has failed to plead any FCA violations that were material. "[A] misrepresentation about

compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the [FCA]." *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). The FCA defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *Escobar*, 136 S.Ct. at 1996.

The Supreme Court in *Escobar*, noting that the standard is "demanding" and "rigorous", stated that:

> The FCA is not "an all-purpose antifraud statute" or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial. *Id*. at 2002-2003.

Under the FCA, a plaintiff must plead with "plausibility and particularity… facts to support allegations of materiality." *Id.* at n.6. A pleading supporting materiality could include, for example, allegations "that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id.* at 2003. The naked insufficiency of Relator's SAC is evident when seeking support for materiality.

An allegation of "legal falsity" asserts that a defendant knowingly submitted claims for payment that falsely certified compliance with regulatory requirements which were "material to the government's payment decision." *Id.* at 1996. Misrepresentations of regulatory compliance can be express or implied, but "must be material to the other party's course of action." *Id.* at 2001. At the same time, the Supreme Court has explicitly rejected the argument that "any statutory, regulatory, or contractual violation is material so long as the defendant knows that the

[g]overnment would be entitled to refuse payment were it aware of the violation." *Escobar*, 136 S.Ct. at 2004. Indeed, "a misrepresentation cannot be deemed material merely because the [g]overnment designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Id. at 2003.

Since *Escobar*, the Fifth Circuit has reiterated that "[t]he materiality test under the FCA is demanding." *U.S. ex rel. Lemon v. Nurses to Go, Inc.*, 924 F.3d 155, 161 (5th Cir. 2019). Additionally, "[n]o one factor is dispositive, and [the] inquiry is holistic." *Id.* In other jurisdictions, in addition to whether the Government has consistently paid claims despite knowledge of the noncompliance and in working through the materiality holistic inquiry, courts have looked at other factors, including whether the "noncompliance goes to the 'very essence of the bargain' or is only 'minor or insubstantial.'" *United States ex rel. Janssen v. Lawrence Mem'l Hosp.*, 949 F.3d 533, 541 (10th Cir. 2020) (citing *Escobar*, 136 S. Ct. at 2003 & n.5).

***Relator's allegations are self-evident of their immateriality***. Relator alleges that "[a]s a direct result of Relator's complaints, both CMS and representatives of the State of Texas have investigated Relator's claims and confirmed the deficiencies and lack of compliance." SAC at ¶ 72.  *See also* SAC at ¶ 25. But the government took ***no*** action to avoid paying Methodist or recoup money previously paid (as the government routinely does when it discovers an overpayment). Further, the government did not employ the various powers it has to further educate, audit or even demand Methodist change its practices. The government did not sanction or penalize Methodist, nor did it exclude Methodist from the Medicare or Medicaid program. Indeed, for almost three years, the government has done only one thing – continue to pay Methodist's Medicare and Medicaid claims.

The Fifth Circuit has considered cases in which the government knew of the alleged fraud but continued to pay. *See U. S. ex rel., Harman v. Trinity Industries, Inc*., 872 F.3d 645, 661-64 (5th Cir. 2017) (analyzing multiple cases in which materiality was not found due to the government's continued payment, including *D'Agostino v. ev3, Inc*., 845 F.3d 1 (1st Cir. 2016); *United States v. Sanford-Brown, Ltd*., 840 F.3d 445 (7th Cir. 2016); *United States ex rel. Marshall v. Woodward, Inc*., 812 F.3d 556 (7th Cir. 2015); *United States ex rel. Kelly v. Serco, Inc*., 846 F.3d 325 (9th Cir. 2017); *United States ex rel. McBride v. Halliburton Co*., 848 F.3d 1027 (D.C. Cir. 2017); *United States ex rel. Petratos v. Genentech Inc*., 855 F.3d 481 (3d Cir. 2017)).

The Fifth Circuit has confirmed the standard set forth in *Escobar* that "continued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality." *United States v. Magnolia Health Plan, Inc*., 810 F. App'x 237, 242 (5th Cir. 2020); quoting *United States ex rel. Harman v. Trinity Indu*s., 872 F.3d 645, 663 (5th Cir. 2017).

The government's continual lack of any action is more than enough to show Relator cannot satisfy the "demanding" and "rigorous" burden of proving the FCA's materiality requirement - a burden - which was only raised by the government's continued payment. *See Harman*, 872 F.3d 645 at 663; see also *United States ex rel. Porter v. Magnolia Health Plan*, 810 Fed. Appx. 237, 242 (5th Cir. 2020). The minor or insubstantial aspects of Relator's alleged misconduct similarly suggests immateriality and should be dismissed.

**D.      Relator's First, Second, Third, and Fourth Counts Should Be Dismissed Because the SAC Does Not Plead Scienter**

Relator must also plead facts supporting the element of scienter. *See Health Choice Alliance, LLC v. Eli Lilly & Co*., No. 5:17-cv-123, 2018 WL 4026986, at *15 (E.D. Tex. July 25, 2018). The threadbare allegations in Relator's Complaint fail to allege any actual knowledge on

the part of Methodist to submit false claims. "'Although Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b).'" *Dorsey v. Portfolio Equitie*s, 540 F.3d 333, 339 (5th 2008) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994)). "'The plaintiff[] must set forth specific facts supporting an inference of fraud.'" *Id.* "The inference may be drawn by alleging facts showing a defendant's motive or 'by identifying circumstances that indicate conscious behavior on the part of the defendant. . . .'" *Health Choice Alliance*, 2018 WL 4026986, at *30 (quoting *Tuchman v. DS Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 2003)). "But the scienter element is not met by allegations of 'mere negligence or even gross negligence.'" *United States ex rel. Long v. GSD&M Idea City LLC*, No. 3:11-cv-1154, 2013 WL 214590 at *7 (N.D. Tex. Jan 18, 2013) (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 338 (5th Cir. 2008)). Relator fails to meet the scienter requirement because the SAC does not plead with particularity any false claims that demonstrates that Methodist had actual knowledge of submission of a false claim to the government. On this basis alone, Relator's SAC should be dismissed.

**E.     Relator's Fifth Count Should Be Dismissed Because The Cause of Action Under Texas Health & Safety Code § 161.134 is time barred.**

The SAC is subject to dismissal, in part, based on the applicable statute of limitation in Texas Health & Safety Code § 161.134. Texas Health and Safety Code § 161.134(a) prohibits "[a] hospital, mental health facility, or treatment facility" from "suspend[ing] or terminat[ing] the employment of or discipline or otherwise discriminat[ing] against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law." Plaintiffs must bring their claims "before the 180th day after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence." *Id*. at (h).

135762845.9                                      - 21 -

Relator alleges she was "constructively" discharged on August 3, 2020 and it is undisputed she did not file this lawsuit until over a year later, on August 18, 2021. ECF No. 2. Given that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law," Relator's cause of action is time barred. *Davis v. United Health Servs.*, No. 1:18-CV-1093-RP, 2020 WL 33597, at *10 (W.D. Tex. Jan. 2, 2020), quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980).

**F.     Relator's Fourth and Sixth Counts Fail to Allege Facts to State a Cause of Action for FCA and TMFPA Retaliation**

Relator's threadbare allegations of retaliation under the FCA and TMFPA resulting from reporting wrongdoing simply are not plausible. The "whistleblower" provision of the FCA prevents the harassment, retaliation, or threatening of employees who assist in or bring qui tam actions. To state a retaliation claim under the FCA, a plaintiff must show that (1) she engaged in protected activity; (2) her employer knew about the activity; and (3) her employer retaliated against her because of the protected activity. *Robertson v. Bell Helicopter Textron*, 32 F.3d 948, 951 (5th Cir. 1994); *see also United States ex rel Ligai v. ESCO Tech., Inc.*, 611 F. App'x 219, 220 (5th Cir. 2015) (same). The "in furtherance" language in both provisions requires a "'nexus' between the protected activity and the filing or potential filing of a qui tam suit." *Guerrero v. Total Renal Care, Inc.*, EP-11-cv-449-KC, 2012 WL 899228, at *4 (W.D. Tex. Mar. 12, 2012) (citing *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 187 (3d Cir. 2001)).

Relator's only allegation relating to engaging in protected conduct is that she complained to Sheri Floyd, MDMC's risk manager, that "conduct of Defendant and MDMC constituted Medicare fraud." SAC ¶ 25.  See *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (no protected activity where plaintiff failed to use words such as illegal, unlawful, or qui tam in characterizing concerns.). As the Fifth Circuit has recognized, "internal complaints that

135762845.9                                          - 22 -

'concern false or fraudulent claims for payment submitted to the government' [are] protected activity under the [FCA]." However, those complaints must actually "raise concerns about fraud." *Jamison v. Flou Fed. Sol., LLC*, No. 3:16-CV-0441-B, 2017 WL 3215289, at *6 (N.D. Tex. July 28, 2017) (quoting *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 603–04 (S.D. Tex. 2012) (quoting *U.S. ex rel. Patton v. Shaw Services, LLC*, 418 F. App'x 366, 371-72 (5th Cir. 2011)). And, while the protected activity need not be clearly in furtherance of a qui tam action, it must include steps "towards the exposure of the false claims, such as investigating or complaining about the fraud." *See Robertson*, 32 F.3d at 951.

At most, even if taken as true, Relator's communications should be characterized as reporting discrepancies, not fraud. These communications are insufficient to alert Methodist of allegedly protected activity, especially considering the reporting of HAPIs was part of her job. *See Robertson*, at 952 (absent use of terms such as illegal, unlawful, or false claims investigation, actions taken consistent with job duties failed to alert employer to protected activity). Relator's single complaint to Sherri Floyd was insufficient to alert Methodist to allegedly protected fraud.

Relator, attempting to shoehorn a standard under a Title VII, inappropriately references a "final warning" relating to her performance as an "adverse employment action." SAC at ¶ 25. An adverse employment action is "a judicially-coined term referring to an employment decision that affects the terms and conditions of employment." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). The 5th Circuit has been clear that (in the context of Title VII and Section 1981), "adverse employment actions consist of 'ultimate employment decisions' such as hiring firing, demoting, promoting, granting leave, and compensating." *Id.* Relator merely alleges she was inappropriately warned, and "believed the warning was a retaliatory response to her continuing complaints of the need to reduce HAPIs". SAC at ¶ 25.

Even if Relator had engaged in protected activity, she has failed to plead facts that establish that Methodist was on notice of fraud. "The second element of Plaintiff's prima facie case is that the employer must be on notice that the employee is investigating fraud." *Guerrero*, 932 F. Supp. 2d at 789. "It is insufficient for the relator to show that the employer knew that the whistleblower had concerns about compliance with the law; she must show that the employer was on notice of the distinct possibility of qui tam litigation." *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010) (internal citation omitted). Without knowledge of the protected act, an employer "could not possess the retaliatory intent necessary to establish a violation" of the anti-retaliation provision of the FCA. *Robertson*, 32 F.3d at 952.

Relator's allegations amount to nothing more than mere criticism of Methodist's response to HAPIs during the COVID-19 pandemic and cannot support her conclusory assertion of having engaged in protected activity. *See Robertson*, 32 F.3d at 951 (holding that the plaintiff's internal reports did not constitute protected activity in part because the plaintiff "admitted that he never used the terms 'illegal,' 'unlawful,' or 'qui tam action' in characterizing his concerns"); *Patton*, 418 F. App'x. at 372 ("Mere criticism of [the defendant's] construction methods, without any suggestion that [the relator] was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity."); *Ligai*, 611 F. App'x at 221 (finding that a report of substandard practices "did not rise to the level of protected activity under the FCA"). Thus, because these alleged complaints do not establish that Relator engaged in protected activity, her retaliation claims under the FCA must be dismissed.

Relator has failed to plead sufficient facts to show a violation under 31 U.S.C. 3730(h) or Texas Health & Safety Code § 161.134. Relator's SAC contains only characterizations and conclusions that do not support a claim of fraud and should be dismissed.

- 25 -

**G.    Dismissal Should be With Prejudice**

Leave to amend is not automatic, but "is within the sound discretion of the district court." *U.S. ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). This is the Relator's **third** attempt to state a claim for relief. There is no reason to believe Relator has additional information or facts beyond what has been presented on this third attempt. The Court may deny leave to amend when a party has failed to cure deficiencies and amendment would be futile. *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).

**V.    CONCLUSION**

For the foregoing reasons, the Court should dismiss the SAC with prejudice and without further leave to amend.

Respectfully submitted,


NORTON ROSE FULBRIGHT US LLP


/s/ *Marc Collier*
Marc B. Collier
Texas State Bar No. 00792418
marc.collier@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701-4255
Telephone: (512) 474-5201
Facsimile:  (512) 536-4598

Jeff J. Wurzburg (*pro hac vice*)
Texas State Bar No. 24105140
jeff.wurzburg@nortonrosefulbright.com
111 W. Houston Street, Suite 1800
San Antonio, Texas 78205
Telephone: (210) 270-9338
Facsimile:  (210) 270-7205

*Counsel for Defendant*


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 15th day of May, 2023, a true and correct copy of the foregoing document was served on all counsel of record by filing it with the Court's CM/ECF system in compliance with Federal Rule of Civil Procedure 5(b)(2)(E).

/s/ *Marc B. Collier*
Marc B. Collier

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GINGER KING,**<br>**ex rel UNITED STATES OF AMERICA**<br>**AND STATE OF TEXAS,** | §<br>§<br>§<br>§ | |
| **Relators,** | §<br>§ | |
| v. | §<br>§<br>§ | Civil Action No. 3:21-CV-1923 |
| **METHODIST HOSPITAL OF DALLAS**<br>**d/b/a METHODIST HEALTHCARE**<br>**SYSTEMS AND d/b/a METHODIST**<br>**DALLAS MEDICAL CENTER,** | §<br>§<br>§<br>§<br>§<br>§ | |
| **Defendant**. | § | |

## ORDER GRANTING UNOPPOSED MOTION FOR EXTENSION OF TIME TO RESPOND TO THE COMPLAINT

The Motion to Dismiss filed by Defendant Methodist Hospital of Dallas is GRANTED in its entirety.  Realtor's Second Amended Complaint is hereby dismissed with prejudice.

**SO ORDERED**

**SIGNED this _____ day of _____ 2023.**

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

135762845.9                                  - 27 -